```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


MANUEL LEMA,                          )
     Plaintiff,                       )
                                      )
          v.                          )   C.A. No. 09-11858-MLW
                                      )
MICHAEL ASTRUE, COMMISSIONER          )
SOCIAL SECURITY ADMINISTRATION        )
     Defendant.                       )
```

                         <u>MEMORANDUM AND ORDER</u>

WOLF, D.J.                                           March 21, 2011

I.   INTRODUCTION

     Plaintiff Manuel Lema has moved to reverse or remand the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income benefits ("SSI") under 42 U.S.C. §§405(g). Defendant Commissioner of Social Security Michael J. Astrue filed a motion to affirm the decision. For the reasons discussed below, plaintiff's motion to reverse and remand is being denied and defendant's motion to affirm the decision is being allowed.

II.  FACTS AND PROCEDURAL HISTORY

     Plaintiff filed an application for Social Security Disability Insurance Benefits and Supplemental Income benefits on January 17, 2007. Tr. at 98-100. Plaintiff alleged a disability arising from severe psychiatric difficulties; he also alleged that he became a

disabled individual on June 10, 2000. Tr. at 103, 121. Defendant initially denied plaintiff's application on February 28, 2007, and on review denied the application again on May 1, 2008. Tr. at 61, 51-53. Plaintiff subsequently filed a Request for a Hearing before an Administrative Law Judge ("ALJ") and the requested hearing was held on April 30, 2009. Tr. at 9. At the hearing, plaintiff amended the alleged onset date of his disability from June 10, 2000, to July 18, 2005. Tr. at 9. The ALJ issued a decision denying the application on May 20, 2009. Tr. at 6-20.

The ALJ found that plaintiff's earning records showed that he had "acquired sufficient quarters of coverage to remain disability insured through December 31, 2005." Tr. at 10. Therefore, plaintiff was required to establish "disability on or before that date in order to be entitled to a period of disability and disability insurance benefits." Id. The ALJ further found that plaintiff did not meet the requirements of the "five step sequential evaluation process for determining whether an individual is disabled under 20 C.F.R. §§404.1520(a) and 416.920(a)" and, therefore, concluded that plaintiff was not under a disability within the meaning of the Social Security Act since July 18, 2005, the amended onset date of plaintiff's disability. Tr. at 10. Steps one through five address whether: (1) the claimant is engaging in substantial gainful activity; (2) the claimant has a

medically determinable impairment that is severe or a combination of impairments that is severe; (3) the claimant's impairment or combination of impairments meets or medically equals the criteria listed in 20 C.F.R. §404 Subpart P, Appendix 1 (20 C.F.R. §§404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926); (4) the claimant's residual functional capacity allows him to perform the requirements of his past relevant work; and (5) the claimant is able to do any other work.  Tr. at 10-11.

The ALJ found that plaintiff satisfied steps one and two because he was not engaged substantial gainful activity since July 18, 2005, the amended alleged onset date of the disability, and he suffered from "affective, anxiety-related and personality disorders that have imposed more than minimal impairment on his ability to engage in basic work-related activities."  Tr. at 12-13.  At step three, the ALJ found that plaintiff's mental impairments --anxiety related disorders, personality disorders and in particular a bipolar disorder with mood swings, periods of racing thoughts and depression-- did not meet or medically equal the requirements of one of the listed impairments in 20 C.F.R. §404 Subpart P, Appendix 1. Tr. 13-16.  Therefore, plaintiff was not automatically deemed disabled. Tr. at 11.

The ALJ, therefore, continued to step four and found that plaintiff had the residual functioning capacity to perform a full

range of work at all exertional levels but with certain non-exertional limitations.  Specifically, he found that plaintiff is "limited to work that is simple, routine, competitive, repetitive tasks on a sustained basis over a normal 8 hour work day, in a stable work environment, that involves no more than simple decision making, no close interpersonal interactions with coworkers, no significant interaction with the public, or require one to perform complex or detailed tasks."  Tr. at 15.  The ALJ concluded that, given the plaintiff's residual functional capacity and its non-exertional limitations, he would be precluded from performing past relevant work.  Tr. At 18.

The ALJ then proceeded to step five, where the burden shifts to Social Security Administration to provide "evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience."  Tr. at 12 (citing 20 C.F.R. §§404.1512(g), 404.1560(c), 416.960(c)).  At this step, the ALJ found that there are such jobs.  Tr. at 19.  Therefore, the ALJ found that plaintiff was not disabled.  Tr. at 19-20.

The ALJ's decision was selected for review by the Review Board of the Social Security Administration, but became final on August

26, 2009, when the Review Board failed to complete its review within ninety days of the ALJ's decision. Tr. at 1.

Plaintiff timely filed the instant petition on October 29, 2009, alleging that the ALJ erred in his step-five analysis. Plaintiff claims that the ALJ's decision should be reversed or remanded because the ALJ disregarded the opinion of a treating expert, gave greater weight to the opinion of a non-examining physician, and failed to contact the treating expert to clarify the basis of his opinion before deciding to disregard it as ambiguous or unsupported. See Mem. in Supp. of Mot. to Dismiss at 2. The Commissioner subsequently filed a motion to affirm the ALJ's decision.

III. ANALYSIS

    A.   <u>The General Standards of Review</u>

"Judicial review of Social Security administrative decisions is authorized by 42 U.S.C. §405(g)." <u>Seavey v. Barnhart</u>, 276 F.3d 1, 9 (1st Cir. 2001). The court's review of Social Security administrative determinations is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." <u>Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999) (citing <u>Manso-Pizarro v. Secretary</u>, 76 F.3d 16, 16 (1st Cir. 1996)). "The ALJ's findings of fact are conclusive when supported by substantial evidence." <u>Id.</u> (citing 42 U.S.C. §405(g)).

Substantial evidence "is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y, United States Dep't of Hous. & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951)). "Even if the record could support multiple conclusions," the ALJ's decision must be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [his] conclusion." Morales, 2008 WL 341636 at *4 (citing Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

However, the ALJ's findings of fact "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Id. (citing Da Rosa v. Secretary, 803 F.2d 24, 26 (1st Cir. 1986)). The ALJ may not "'ignore medical evidence and substitute his own views for uncontroverted medical opinion.'" Vazquez-Rosario v. Barnhart, 149 Fed. Appx. 8, 10 (1st Cir. 2005) (citing Nguyen, 172 F.3d 31, 34 (1st Cir. 1999)(per curiam)). "Under 42 U.S.C. §¤504(g), remand is appropriate only where the court determines that further evidence is necessary to develop the facts of the case fully, that such evidence is not cumulative, and that consideration of it is essential to a fair hearing." Evangelista v. Sec'y of Health & Human Servs., 826 F.2d

136, 139 (1st Cir. 1987).

B. <u>The Timing Requirements for Plaintiff's Disability Claim</u>

A plaintiff "is not entitled to disability benefits unless he can demonstrate that his disability existed prior to the expiration of his insured status." <u>Rivera v. Secretary of Health & Human Services</u>, 818 F.2d 96, 97 (1st Cir. 1986), <u>cert. denied</u>, 479 U.S. 1042 (1987)(citing <u>Deblois v. Secretary of Health and Human Services</u>, 686 F.2d 76, 80-81 (1st Cir. 1982); <u>Sampson v. Califano</u>, 551 F.2d 881, 882 (1st Cir. 1977)). <u>See also</u> <u>Flaten v. Secretary of Health & Human Servs.</u>, 44 F.3d 1453, 1459 (9th Cir. 1995) (citing 42 U.S.C. §423(a)(1)). Plaintiff must, therefore, demonstrate that he was disabled within the meaning of the Social Security Act while still disability insured, that is, on or before December 31, 2005. The ALJ found that plaintiff had not been disabled within the meaning of the Social Security Act from July 18, 2005, the amended alleged onset date, to the date of the ALJ's decision.

C. <u>The Treating Physician's Opinion</u>

Plaintiff argues that the ALJ impermissibly disregarded the January 27, 2009 opinion of the plaintiff's treating physician, Dr. Robert Saltzman, M.D., of the Massachusetts Society for the Prevention of Cruelty to Children ("MSPCC") and favored, instead, the opinion of the state agency's non-examining physician, Jane Metcalf, Ph.D, as set forth in a report produced two years before

Dr. Saltzman's opinion. See Mem. in Supp. of Mot. to Reverse at 11. In addition, plaintiff argues that the ALJ impermissibly failed to contact the treating physician to clarify the basis of his opinion before deciding to disregard it as ambiguous or unsupported. See id.

Pursuant to 20 C.F.R. §404.1527(d), the ALJ should give the opinions of treating physicians "'on the nature and severity' of a claimant's impairment 'controlling weight' if they are 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence' in the case." Soto-Cedeno v. Astrue, 380 Fed. Appx. 1, 3 (1st Cir. 2010) (citing 20 C.F.R. §404.1527(d)(2))). In addition, 20 C.F.R. §404.1527(d)(2) "provides that the agency will 'always give good reasons' for the weight it gives a treating source opinion." Id.

If the ALJ decides that the treating physician's opinion is not controlling, he must then look to the following factors to determine its weight: "(1) length of treatment relationship and frequency of examination; (2) nature and extent of treatment relationship; (3) supportability; (4) consistency; and (5) specialization." Haidas v. Astrue, No. 08-11274, 2010 WL 1408618 at *3 (D. Mass. Mar. 31, 2010)(citing 20 C.F.R. §404.1527(d)). "Although resolution of conflicts in the medical evidence is

reserved to the Secretary, he cannot ignore the regulations that define how to calculate the weight afforded to a certain opinion." Weiler v. Shalala, 922 F. Supp. 689, 696 (D. Mass. 1996) (citing Barrientos v. Secretary of Health and Human Services, 820 F.2d 1, 2-3 (1st Cir. 1987); 20 C.F.R. §404.1527). However, the ALJ is not required to address each of these factors. See Dietz v. Astrue, No. 08-30123, 2009 WL 1532348, at *7 (D. Mass. May 29, 2009) (ALJ not required to discuss each of the regulatory criteria as First Circuit has upheld the rejection of treating physician opinions on basis of select factors); Frost v. Barnhart, No. 03-215, 2004 WL 1529286 at *6 & n.5 (D. Me. May 7, 2004)(noting that there is no First Circuit caselaw indicating that there are circumstances under which an ALJ must "slavishly discuss each of the section 404.1527(d)(2) criteria").

Here, the ALJ did not give the treating physician's[1] January 27, 2009[2] opinion controlling weight because, the ALJ found, his

---

[1] Defendant's argument that Dr. Saltzman was not a treating physician is unavailing. The ALJ specifically referred to Dr. Saltzman as Lema's treating psychiatrist. See Tr. at 12.

[2] At the hearing, Lema's counsel explained that Exhibit 20F, which is handwritten, is dated January 27, 2009, not 2005. Tr. at 43. The ALJ accepted this correction. Tr. at 15. The record shows that Lema was being treated at the Community Council of Nashua in 2005, not at MSPCC. See exhibits 3F, 4F. He was first seen at MSPCC on December 6, 2006. Tr. at 365. Dr. Saltzman's earliest report is dated January 31, 2007. Tr. at 417.

opinions were "inconsistent with the . . . record as a whole for the period since July 18, 2005." Tr. at 15. The ALJ also considered inconsistency a factor in his decision to give the treating physician's opinion "minimal/less probative weight", thus focusing on factor four of 20 C.F.R. §404.1527(d). Id. (citing 20 C.F.R. §404.1527(d) and 416.927).

The question for this court is whether a reasonable mind could accept that the treating physician's opinion is inconsistent with the observations made by the ALJ at the hearing, and the circumstances described by the rest of the record, as a whole. See Rodriquez, 647 F.2d at 222. The treating physician's opinion was that plaintiff suffers from Bipolar disorder, severe mood swings, racing thoughts, and severe agitation. Tr. at 442-43. In considering the evidence, the ALJ found that when plaintiff was "seen at Community Council of Nashua on multiple occasions between July 2005 and August 2006 he was assessed [Gobal Assessment of Functioning ("GAF") scores] of 54, which are consistent with moderate impairment of social and occupational functioning that would include his ability to concentrate and persist at tasks or tolerate ordinary work pressure." Tr. at 17. The ALJ also found that "when seen at South Bay Mental Health Center on September 7, 2006, [plaintiff] was assessed a GAF score of 61, which is consistent with mild impairment of social and occupational

functioning." Id. The ALJ also found that plaintiff was assessed to have only moderate to mild impairments of social functioning when first seen at MSPCC, and when assessed by a non-examining state agency psychologist on February 21, 2007. Id.

The assessments produced by the treating psychiatrist and the therapists and clinicians at MSPCC span the period of December, 2006, to April, 2009. See Exhibits 13F, 14F, 16F-19F, 21F, 22F, 24F-26F. The ALJ considered the later-in-time MSPCC assessments, made in 2009, in which plaintiff is given GAF scores ranging from 40 to 50. Id. These scores are "consistent with marked to extreme impairment," and the ALJ found that they were inconsistent with the record as a whole, including GAF scores made over the year prior to these assessments. Id. "[T]he Social Security Administration does not rely on Global Assessment Functioning scores for 'use in the Social Security and Supplemental Security Income disability programs' and has indicated that the scores have 'no direct correlation to the severity requirement of the mental disorders listings.'" DeBoard v. Comm'r of Soc. Sec., 211 Fed. Appx. 411, 417 (6th Cir. 2006) (citing Wind v. Barnhart, 133 Fed. Appx. 684, 2005 WL 1317040, at *6 n.5 (11th Cir. 2005)). See also Fed. Reg. 50746, 50764-65 (Aug. 21, 2000). However, upon a review of the substantive content of all the assessments to which the ALJ refers, a reasonable mind can conclude that the ALJ used GAF scores to

illustrate the disparity between the earlier medical opinions and later MSPCC assessments, including the opinion of Dr. Saltzman, and not as the sole source of his conclusion that Dr. Saltzman's opinion is inconsistent with the record as a whole for the period since July 18, 2005.

In his finding that Dr. Saltzman's opinion is inconsistent with the record as a whole, the ALJ necessarily had to take into consideration whether Dr. Saltzman's 2009 opinion reflected the severity of impairment of plaintiff's condition for the period between July 18, 2005 and December 31, 2005. This is because, as stated earlier, plaintiff's alleged onset date of disability was July 18, 2005, and he was only disability insured until December 31, 2005. There is no finding --or claim by the plaintiff-- that the severity of plaintiff's disability has remained constant since 2005, and it is reasonable to conclude that Dr. Saltzman's assessment could be an accurate reflection of plaintiff's condition in 2009, but not of his condition in 2005. In Soto-Cedeno, the First Circuit explained that all medical reports on the record "obviously related" to Soto's functioning at the time when the reports were produced. See Soto-Cedeno, 380 Fed. Appx. at 3. Therefore, the First Circuit found that the treating physician's medical opinion as of December 2, 2005 could not reasonably be characterized as inconsistent with the other medical evidence of

the record because "[t]he consulting psychiatrists and Dr. Rivera evaluated Soto's condition as of different time periods." <u>Soto-Cedeno</u>, 380 Fed. Appx. at 1. However, unlike in <u>Soto-Cedeno</u>, the question for the ALJ in this case was not whether plaintiff was disabled at the time of the hearing, but rather whether he was disabled on or before December 31, 2005, the last date on which plaintiff was disability insured. A reasonable mind can conclude that the earlier reports provide evidence that Lema's condition was, at the time of the earlier reports, less severely disabling than in 2009, when Dr. Saltzman produced his report. Therefore, regardless of whether Dr. Saltzman's report accurately reflects the severity of plaintiff's condition in 2009, the ALJ was justified in concluding that Dr. Saltzman's 2009 report is inconsistent with the record as a whole for the period since July 18, 2005. Tr. at 17-18.

In essence, the ALJ provided an appropriate explanation for rejecting Dr. Saltzman's opinions regarding Lema's ability to function in the workplace for the period of July 18, 2005 to December 31, 2005. The ALJ was also justified in implicitly finding that those opinions expressed in 2009 were an insufficient basis for concluding that plaintiff was disabled in 2005.

    D.    <u>Employment Suitable for Plaintiff</u>

"The applicant has the burden of production and proof at the

first four steps of the [disability determination] process." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). "[T]he Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Id. Pursuant to 20 C.F.R. §§404.1560(c) and 404.1566, the ALJ was required to consider plaintiff's age, education, work experience, and residual functional capacity. He did so. Tr. at 19, 41.

"[I]t is appropriate for the ALJ to rely on the testimony of a vocational expert to provide the necessary evidence to link a claimant's residual skills with the requirements of various jobs in the national economy." Haidas, 2010 WL 1408618 at *5(citing Arocho v. Sec'y of Health and Human Servs., 670 F.2d 374, 375 (1st Cir.1982)). Here, the ALJ employed a vocational expert to determine whether there are a significant number of jobs in the national economy which accommodate plaintiff's residual functional capacity and vocational factor. Tr. at 41-43. The vocational expert testified as to the availability of jobs suited to a person of plaintiff's age, education, work experience, and residual functional capacity. Tr. 41-42. Specifically, the vocational expert identified "hand packer" (4,000 jobs in the regional economy and 219,000 in the national economy), "production worker, including semi-conductor processing" (6,700 in the regional economy and

376,000 in the national economy), and "production inspector" (2,900 in the regional economy and 149,000 in the national economy), as jobs suited to a person in plaintiff's position. Id.

"However, the ALJ must ask the appropriate hypothetical for the vocational expert to consider." Haidas, 2010 WL 1408618 at *5 (citing Arocho, 670 F.2d at 375). "A hypothetical is appropriate if the question accurately reflects the objective medical findings in the record." Id. (citing Arocho, 670 F.2d at 375; Perez v. Sec'y of Health and Human Servs., 958 F.2d 445, 447 (1st Cir.1991)). Here, the ALJ provided the vocational expert with a hypothetical which reflected the medical and functional capacity findings of the medical records to which he gave greater probative weight. Tr. at 41. The ALJ did not provide the vocational expert with a hypothetical that reflected the medical and functional capacity findings that Lema's treating psychiatrist had made in 2009. When questioned by plaintiff's counsel, the vocational expert confirmed that, if Dr. Saltzman's evaluation was found to be "credible and supported by the evidence", he would not find that there are any jobs that Lema could perform. See Tr. 42-43. When an ALJ's hypothetical assumes that certain functional limitations do not exist, and when the "medical evidence did not permit that assumption," the ALJ cannot "rely on the vocational expert's response as a basis for finding claimant not disabled." Rose v.

Shalala, 34 F.3d 13, 19 (1st Cir. 1994). See also Arocho, 670 F.2d at 375. However, in this case, the court finds that the medical evidence does permit the assumption that the severe impairments found in Dr. Saltzman's 2009 opinion did not exist for the period during which plaintiff both claimed a disability and was disability insured. See supra, section III(B).

The court, therefore, finds that the ALJ presented a valid hypothetical for the vocational expert to consider and properly took into consideration the vocational expert's opinion that there are jobs that exist in significant numbers in the national economy that the plaintiff could perform. See Tr. at 41-42, 19.

IV. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Plaintiff's Motion to Reverse the Decision of the Commissioner of Social Security (Docket No. 14) is DENIED.

2. Defendant's Motion for Judgment Affirming the Commissioner's Decision (Docket No. 16) is ALLOWED.

                                              /s/ MARK L. WOLF
                                              UNITED STATES DISTRICT JUDGE